IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| TEXAS J. STIGALL, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 05-843-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

      Alan Stuart Graf
      1020 S. W. Taylor Street, Suite 230
      Portland, Oregon  97205

           Attorney for Plaintiff

      Karin J. Immergut
      United States Attorney
      District of Oregon
      Neil J. Evans
      Assistant United States Attorney
      1000 S. W. Third Avenue, Suite 600
      Portland, Oregon  97204-2902

Page 1 - OPINION AND ORDER

Nancy A. Mishalanie
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075

    Attorneys for Defendant

KING, Judge:

Plaintiff Texas J. Stigall brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). I reverse the decision of the Commissioner.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

Page 3 - OPINION AND ORDER

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. It is more than a scintilla, but less than a preponderance, of the evidence. Id.

Even if the Commissioner's decision is supported by substantial evidence, it must be set aside if the proper legal standards were not applied in weighing the evidence and in making the decision. Id. The court must weigh both the evidence that supports and detracts from the Commissioner's decision. Id. "Under this standard, the commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ found that Stigall suffers from severe impairments of coronary artery disease, lumbar post-laminectomy syndrome, and depression. The ALJ found that Stigall was not very

Page 4 - OPINION AND ORDER

credible about the extent of his limitations. The ALJ then concluded that there was no reason to doubt the testimony of Stigall's partner and that she did not provide specific information which would be inconsistent with a finding that Stigall could engage in all work activity. Later in the opinion, the ALJ found that she was not entirely credible. According to the ALJ, the opinions of the examining and treating physicians were consistent with each other and did not overstate Stigall's severe impairments.

The ALJ concluded that Stigall retained the residual functional capacity to perform a limited range of light work, with the ability to lift 20 pounds frequently and 10 pounds occasionally. The ALJ added limitations that Stigall requires a sit/stand option, should only occasionally climb, stoop, kneel, crawl or bend, and should not have any constant repetitive use of his left non-dominant hand that would require bending the wrist. For mental limitations, the ALJ concluded that Stigall should perform no more than simple 1-2-3 step work and should have only limited interaction with the public and co-workers. Based on expert vocational testimony, the ALJ concluded that Stigall could work as an electrical worker, a small parts assembler, and a laundry folder and consequently was not disabled under the Act.

## FACTS

Stigall, who was 48 years old at the time of the ALJ's decision, has a tenth grade education and past work experience as a laborer and a care provider, performing the latter until at least March 2002. Stigall contends that he has been disabled since April 1, 2001, due to his coronary artery disease, back pain, and pain in his left wrist and left knee. Stigall states that he is only kept from working by the back pain.

Stigall has had surgeries for his problems: stents placed in his heart in 1995, a left L4-5 microdisectomy and left L4-5 microforaminotomy on January 12, 2001, and a quintuple coronary bypass on September 10, 2002.

Stigall complains of continuous sharp aching in the lower back with sharp pains radiating down his left leg to his foot. Any type of lifting or walking increases the pain but Stigall states that he can lift 10 to 15 pounds of groceries. Standing and stooping increase the back pain. Stigall takes narcotic pain medication when the pain is particularly bad but it nauseates him and makes him feel like a zombie. He also uses marijuana for pain control, for which he has a state medical marijuana card. Stigall gets angina, which he treats with Nitrostat, but he describes the limitations from his heart condition as not too bad.

Stigall can only walk 100 yards due to back and leg pain, but occasionally leaves his home to visit friends and can engage in hobbies for two hours before resting. He occasionally vacuums, sweeps, or folds clothes but has difficulty doing laundry or cooking because of the standing and lifting required to do the tasks. Stigall weeds his garden on his knees for up to 45 minutes but feels the effects in his back afterwards. He spends 30 to 60 minutes in his recliner every afternoon because of the back pain. At the time of the hearing, Stigall had not cut wood or gone camping in two years because of the pain. Thirty minutes of standing in the hall prior to the hearing made Stigall return to sit in his car to relieve the pain. He can only climb stairs one stair at a time.

Debra Irby, Stigall's partner of 24 years, testified that his condition had worsened during the last couple of years prior to the hearing. She can tell that his back is hurting because the pain keeps him from standing up straight. Mowing the lawn with the power mower will affect him for

Page 6 - OPINION AND ORDER

two or three days afterwards. Irby usually has to finish the task. Irby states that Stigall is confined to bed due to back pain more than twice a month. Irby performed about half of the tasks when Stigall was the care provider for her father. Stigall grocery shops with Irby and pushes the cart while she lifts items into it. Irby does not believe that Stigall could work a full day unless he had many more breaks because he can only be in one position for 20 minutes at a time. On a good day, she observes Stigall use his recliner four or five times while on a bad day, Stigall may only get out of bed four or five times.

Dr. Borden performed a cardiovascular disability examination on Stigall on February 13, 2003. He reported:

> IMPRESSION: He is a 47 year-old with two past MIs and five vessel cardiac grating with a big time overlay of musculoskeletal problems. He clearly has some cardiac function issues. I saw in one of the reports that his left ventricular function looked good and certainly on the treadmill his EKG looked fine until the rest phase. I would saw [sic] he is a New York Heart classification II at this point, but I think his functional abilities are a lot less due to his musculoskeletal problems. Again, to review his past labor history, he was a heavy laborer most of his life. Up until his last heart attack he was doing in home care which obviously is a lot less stressful to his body.
>
> In terms of what the state usually likes to know, carrying, lifting, traveling, handling objects, etc., I think he is very limited. He has very limited training. He has limited ability to do any physical labor due to his musculoskeletal problems and ongoing cardiovascular issues. I do not think he is unemployable and home care actually seems like a pretty good option for him at this point. However I do feel he needs a lot of work and attention to the musculoskeletal aspects of his condition and needs to perhaps go through some formal cardiac rehab since he has not done that as of yet.

Tr. 260.

Dr. Berquist, a neurosurgeon, evaluated Stigall on July 31, 2003, for back and left hip pain. He reported:

Page 7 - OPINION AND ORDER

>Assessment: Back pain with persistent numbness. Mr. Stigall is a difficult patient to evaluate, as his history is somewhat malleable and inconsistent. For example, at one point he relates the onset of his current problems to his surgery, but when asked if this means that his symptoms are worse since the surgery, i.e., due to the surgery, he quickly states that surgery was somewhat helpful. He also gives the impression that his acute condition has been present for a long time but later makes it clear that he had an acute episode beginning two weeks ago and that prior to that things were at least more tolerable. However, the most important issue is whether or not his chief complaint is midline low back pain or left leg pain. There is some suggestion that his symptoms could be radicular, but this is not at all clear. Unfortunately, the history is the key examination in making the diagnosis of symptomatic foraminal stenosis.
>
>Recommendation: We attempted to have a discussion with Mr. Stigall about the difference between back and leg pain and the fact that surgery is not generally helpful for back pain. This wasn't very fruitful as he is almost demanding that we, or somebody, should be able to relieve him of his symptoms. With back pain this is simply not realistic. In the end we told him we would send a report to Dr. Cummings, but I don't think it's likely that an operation will be helpful.

Tr. 300.

## DISCUSSION

I.     <u>Plaintiff's Testimony</u>

Stigall contends that he consistently reported his symptoms and limitations to the treating and examining medical providers. He argues that the ALJ's rejection of his testimony fails because the lack of objective medical evidence alone is not a sufficient reason for rejecting a claimant's testimony. Stigall also contends that the ALJ did not provide specific reasons for rejecting specific testimony.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or

combination of impairments could reasonably be expected to produce some degree of symptom. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The claimant is not required to produce objective medical evidence of the symptom itself, the severity of the symptom, or the causal relationship between the medically determinable impairment and the symptom. The claimant is also not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. Id. at 1282. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. Id. at 1284.

Although the ALJ cannot reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the pain and its disabling effects. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ relied on Dr. Berquist's note listing Stigall's complaints and stating that Stigall was a difficult patient to evaluate because his history was malleable and inconsistent. Dr. Berquist also stated that after talking to Stigall, "it's difficult to know how much leg pain there may be" based on Stigall's explanation of the severity and timing of his symptoms, quoted above. Tr. 299. Although I agree with Stigall that Dr. Berquist did not expressly question his credibility, Stigall's inability to consistently explain his symptoms supports a conclusion that his statement of symptoms at the hearing may not be accurate either.

Page 9 - OPINION AND ORDER

The ALJ noted that Stigall was definitely inconsistent between his statements to Dr. Ogisu on August 5, 2002 and his statements at the hearing. Dr. Ogisu noted Stigall's stated limitations as sitting continuously one to two hours, standing one hour, inability to walk at all on his worst days and up to several hundred yards on his best days, and lifting ability varying from nothing up to 30 pounds. Stigall told Dr. Ogisu he needed assistance hauling wood but was working as a home care provider for Irby's father. Dr. Ogisu observed that Stigall was able to go from standing to sitting to supine without difficulty when getting on and off the exam table, although remaining in a supine position was uncomfortable.

I do not read the chart notes to be an admission on Stigall's part, as the ALJ stated. The ALJ noted that at the hearing, Stigall stated that he could drive for 75 minutes but could only sit for a few minutes. Stigall actually stated that he could drive for 75 to 100 miles at a time but could only sit between 30 to 60 minutes at a time, depending on the day. Although there is some inconsistency here, it is not significant considering that Stigall's condition changes from day to day.

At the hearing, Stigall first stated that he was sure he stopped being a care provider after his back surgery, but his wage information shows that he was paid well after this. He immediately admitted that he did not remember when he stopped, other than he was no longer performing the job at the time of the hearing. Being unable to remember the date does not indicate a lack of credibility but insisting that it was after a particular surgery, when in truth you cannot remember, is evidence of a lack of credibility.

The ALJ noted that Stigall told Dr. Ogisu on August 5, 2002 that he needed assistance hauling wood but in December 2002 he told Dr. Cummings that he had low back pain from

Page 10 - OPINION AND ORDER

carrying a load of wood. The two statements are not necessarily inconsistent. Stigall could have suffered pain in December 2002 while hauling wood with the help of another person.

In summary, the ALJ stated:

> The claimant has no medically determinable physical impairment which could reasonably be expected to cause his alleged symptoms. While the claimant has severe musculoskeletal and heart impairments, the documentary reports of record reveal his surgeries have corrected these problems. While he may still have residuals of these diseases, his allegations are inconsistent with the medical record as a whole. Therefore, extending to the claimant the greatest degree of credibility possible, I find the claimant is not very credible as to the extent of his limitations, and retains the ability to perform some work.

Tr. 33.

As noted above, medical evidence is a relevant factor in determining the severity of the pain and its disabling effects. Rollins, 261 F.3d at 857. I conclude, however, that the ALJ's characterization of the record, that the surgeries corrected Stigall's problems, is not an accurate summary and consequently, not a clear and convincing reason for rejecting his testimony. The doctors agreed that Stigall suffers from post-laminectomy syndrome (Dr. Banks, Tr. 217; Dr. Cummings, Tr. 302). Because there was no surgical solution, both doctors recommended trying to find the appropriate pain medication or other chronic pain management technique. Even Dr. Berquist believed that Stigall was still in pain, although he could not determine the location or severity through discussion with Stigall.

Although I concede that it is close considering some of the inconsistencies in Stigall's statements, I find that the ALJ did not give clear and convincing reasons for rejecting Stigall's credibility.

II.  Lay Testimony

Stigall contends that because the ALJ made inconsistent findings concerning the lay testimony of Stigall's partner, Debra Irby, the ALJ provided no legitimate reason for rejecting Irby's extensive testimony about Stigall's symptoms and limitations.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness.  A medical diagnosis, however, is beyond the competence of lay witnesses.  Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).

In the body of the opinion, the ALJ stated:  "While there is no reason to doubt the statements and testimony of Ms. Irby, claimant's girlfriend, she has provided no specific information which would be inconsistent with a finding that the claimant can engage in all work activity."  Tr. 33.

This statement is not true.  The ALJ noted that Stigall takes four to five naps a day, that at least twice a month he is unable to get out of bed, and that his condition is getting worse.  Tr. 32.  Missing two or more days of work a month results in a person being unable to maintain competitive employment, as the vocational expert testified.  Tr. 407.

In the numbered Findings, the ALJ stated that the allegations of Stigall "and his witness" regarding his limitations are not entirely credible for the reasons set forth in the body of the decision.  Tr. 35.  There were no reasons set forth for Irby, however.  Thus, the ALJ did not give germane reasons for the rejection of her testimony, if that is what he actually meant to do in light of the inconsistency in the opinion.

IV.    <u>Validity of Hypothetical Question</u>

Stigall contends that the ALJ did not meet his burden at step five because his residual functional capacity finding and hypothetical question to the vocational expert did not accurately reflect Stigall's limitations.

Hypothetical questions posed to a vocational expert must specify all of the limitations and restrictions of the claimant. <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1160 (9th Cir. 2001). If the hypothetical does not contain all of the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy. <u>Id.</u>

Based on my conclusions that the ALJ improperly rejected the testimony of Stigall and Irby, I also find that the hypothetical did not specify all of Stigall's limitations. Thus, it is without evidentiary value.

V.    <u>Remedy</u>

The court has the discretion to remand the case for additional evidence and findings or to award benefits. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1292 (9th Cir. 1996). The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. <u>Id.</u> If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178-79 (9th Cir. 2000), <u>cert. denied,</u> 531 U.S. 1038 (2000).

Page 13 - OPINION AND ORDER

The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the Ninth Circuit, however. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003). The court has the flexibility to remand to allow the ALJ to make further determinations, including reconsidering the credibility of the claimant. Id. On the other hand, "in the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004).

The testimony of Stigall is corroborated by Irby. Although Stigall is not a good historian, his daily activities are quite limited in both their accounts. I see no reason for the ALJ to reconsider the credibility of either Stigall or Irby and accordingly I credit their testimony as true. Based on their statements of Stigall's limitations, and the vocational expert's testimony that someone who would miss as much work as Stigall could not be employed in a competitive position, it is clear that the ALJ would be required to find Stigall disabled under the Act. There is no need for further hearing.

## CONCLUSION

The decision of the Commissioner is reversed. The case is remanded for a finding of disability.

IT IS SO ORDERED.

Dated this ___6th___ day of April, 2006.

                                                /s/ Garr M. King
                                                Garr M. King
                                                United States District Judge